# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

SECURA SUPREME INSURANCE COMPANY,

      Plaintiff,

v.

RENEE BROWN,
ROBERT BROWN,
KEVIN SHAUB, and
TRACI SHAUB,

      Defendants.

---

## COMPLAINT FOR DECLARATORY RELIEF

---

Plaintiff, Secura Supreme Insurance Company, by and through its counsel, Melissa A. Wiese of Lambdin & Chaney, LLP, submits its Complaint for Declaratory Judgment as follows:

### I.  JURISDICTION AND PARTIES

1. Secura Supreme Insurance Company ("Plaintiff" or "SECURA") is a Mutual Insurance Company operating in the State of Colorado and organized under the laws of the State of Wisconsin, with its principal place of business in Appleton, Wisconsin.

2. Upon information and belief, Defendants Renee Brown and Robert Brown (the "Browns") are individuals who reside at 32534 Meadow Mountain Lane, Evergreen, Colorado.

3. Upon information and belief, Defendants Kevin Shaub and Traci Shaub (the "Shaubs") are individuals who reside at 1891 Sugarbush Drive, Evergreen, Colorado.

4. Plaintiff is of diverse citizenship from all of the Defendants. The matter in controversy exceeds, exclusive of interest and costs, the sum specified in 28 U.S.C. § 1332.

5. SECURA brings this action pursuant to the Declaratory Judgment Act for interpretation of two homeowners insurance policies and a declaration that it does not owe either a defense or indemnification for the claims asserted by Kevin and Traci Shaub against Renee and Robert Brown.

6. All necessary parties under F.R.C.P. Rule 57 and 28 U.S.C. § 2201 are before the Court.

7. Venue is this judicial district is proper under 28 U.S.C. § 1391 based on the following:

    a. The contracts of insurance were negotiated and entered into in Colorado;

    b. The contracts of insurance were issued to the named insureds in Colorado;

    c. The contract place of performance was Colorado;

    d. The named insureds are domiciled in Colorado;

    f. The insured risk under the contracts of insurance is located in Colorado.

## II.    THE POLICIES

8. SECURA issued homeowner's policy no. PX 275 44 59 to Robert and Renee Brown, listing 1891 Sugarbush Dr., Evergreen, CO 80439 as the "Primary Residence Premises" and 2037 Meadow Brook Dr., Vail, CO 81657 as the "Secondary Residence Premises", effective April 7, 2017 to July 28, 2017, at which time it was cancelled at the Browns' request ("Policy 1"), attached as *Exhibit 1;* cancellation request attached as *Exhibit 2*.

9. SECURA issued homeowner's policy no. PX 275 66 45 to Robert and Renee Brown, effective June 16, 2017 to June 16, 2018, listing 32534 Meadow Mountain Lane, Evergreen, CO 80439 as the "Primary Residence Premises" and 2037 Meadow Brook Dr., Vail, CO 81657 as the "Secondary Residence Premises" ("Policy 2"), attached as **Exhibit 3**.

10. Policy 1 and Policy 2 (collectively the "Policies") contain identical forms, including Mile-Stone Package Policy form PKP 0005 0803 and Personal Umbrella Insurance form PKP 0001-UMB 1604.

11. The Policies provide in pertinent part as follows:

### HOMEOWNERS COVERAGE PART

#### HOMEOWNERS COVERAGE PART
#### DEFINITIONS

\* \* \*

**B.** In addition, certain words and phrases are defined. They are in italics when used.

\* \* \*

    **2.** *Bodily injury* means bodily harm, sickness or disease, including required care, loss of services and death that results.

\* \* \*

    **6.** *Insured Location* means:

        **a.** The *residence premises;*

        **b.** The part of other premises, other structures and grounds used by you as a residence; and

            **(1)** Which is shown in the Declarations;

            or

            **(2)** Which is acquired by you during the policy period for your use as a residence;

    **c.**    Any premises used by you in connection with a premises described in **a.** and **b.** above;

    **d.**    Any part of a premises:

        **(1)**    Not owned by an *insured;* and

        **(2)**    Where an *insured* is temporarily residing;

* * *

**8.**    *Occurrence* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    **a.**    *Bodily injury*; or

    **b.**    *Property damage*.

**9.**    *Property damage* means physical injury to, destruction of, or loss of use of tangible property.

* * *

**11.**    *Residence premises* means:

    **a.**    The one family dwelling where you reside;

    **b.**    The two, three or four family dwelling where you reside in at least one of the family units; or

    **c.**    That part of any other building where you reside;

and which is shown as the *residence premises* in the Declarations.

* * *

<b>HOMEOWNERS COVERAGE PART<br>SECTION II – LIABILITY COVERAGES</b>

**A.**    **Coverage E – Personal Liability**

If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

4

1. Pay up to our limit of liability for the damages for which an insured is legally liable. Damages include prejudgment interest awarded against an *insured*; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. **We are not obligated to defend after we have paid, or offered to pay, an amount equal to the limit of our liability.**

\* \* \*

**HOMEOWNERS COVERAGE PART**
**SECTION II – EXCLUSIONS**

\* \* \*

E. **Coverage E Personal Liability And Coverage F – Medical Payments to Others**

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

   *Bodily injury* or *property damage* which is expected or intended by any *insured*, or may reasonably be expected to result from the intentional acts of any *insured*, even if the resulting *bodily injury* or *property damage:*

   a. Is of a different kind, quality or degree than initially expected or intended;

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended; or

   c. Resulting from the criminal acts of any *insured*. . . .

\* \* \*

4. *Insured's Premises Not an Insured Location*

   *Bodily injury* or *property damage* arising out of a premises:

5

  **a.** Owned by an *insured*;

  **b.** Rented to an *insured; or*

  **c.** Rented to others by an *insured*;

that is not an *insured location*;

* * *

**F.** **Coverage E Personal Liability**

Coverage **E** does not apply to:

**2.** *Property damage* to property owned by an *insured*. This includes costs or expenses incurred by an *insured* or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an insured location;

**3.** *Property damage* to property rented to, occupied or used by or in the care of an *insured*. This exclusion does not apply to property damage caused by fire, smoke or explosion;

* * *

# PERSONAL UMBRELLA INSURANCE

* * *

As used in this part the following **DEFINITIONS** apply.

* * *

**6.** *Damages* means the total of:

  **a.** sums the *insured* must pay (legally or by agreement with our written consent) because of *bodily injury, personal injury or property damage* covered by this coverage part, and caused by an *occurrence;*

  **b.** reasonable expenses the *insured* incurs in the investigation, defense and settlement of a claim or suit because of *personal injury* or *property damage* covered by this coverage part, except salaries of the *insured's* regular employees and expenses payable under the **DEFENSE COVERAGE** part of this form.

6

\* \* \*

10. *Occurrence* means:

    a.  an accident, happening or event that results in bodily injury or property damage neither expected nor intended from the standpoint of the *insured*. Continuous or repeated exposure to the same conditions is considered one *occurrence;* or . . . .

\* \* \*

13. *Property damage* means physical injury to or destruction of tangible property, including loss of its use.

\* \* \*

**COVERAGE**

We pay *damages* on behalf of the *insured,* subject to the **EXCLUSIONS** and **LIMITS OF LIABILITY**
**EXCLUSIONS**

\* \* \*

We do not cover:

\* \* \*

6.  *Bodily injury* or *property damage* which is expected or intended by any *insured*, or may reasonably be expected to result from the intentional acts of any *insured*, even if the resulting *bodily injury* or *property damage:*

    a.  is of a different kind, quality or degree than initially expected or intended;

    b.  is sustained by a different person, entity, real or personal property, than initially expected or intended; or

    c.  resulting from the criminal acts of any *insured*.

9.  *Property damage* to:

    a.  property owned by the *insured*; or

    \* \* \*

    d.  property used or occupied by the *insured* or rented to or in the care, custody or control of the *insured*.

7

\* \* \*

**DEFENSE COVERAGE**

**1.**   If *primary insurance* does not cover *personal injury* or *property damage* covered by this coverage part, we shall:

    **a.**   Defend the *insured* against a claim or suit for *damages*. We may investigate and settle a claim or suit as we decide appropriate.

\* \* \*

12.   The Policies are amended by an endorsement entitled Amendment of Policy Provisions – Colorado, form PKE 2002 1510, which provides, in pertinent part, as follows:

## AMENDMENT OF POLICY PROVISIONS – COLORADO

\* \* \*

THE FOLLOWING CHANGES APPLY TO **HOMEOWNERS INSURANCE** SECTION(S) OF THE POLICY, IF SUCH COVERAGE IS SHOWN IN THE DECLARATIONS.

\* \* \*

**SECTION II – EXCLUSIONS** is amended as follows:

\* \* \*

The following exclusion is added as item **E.10.**:

    **10**.   **Misrepresentation**

        *Bodily injury* or *property damage* arising out of, or caused directly or indirectly by, any misrepresentation made by or attributed to any *insured*.

\* \* \*

### III.   THE UNDERLYING COMPLAINT

13.   This matter arises out of the sale of a private residence with an address of 1891 Sugarbush Drive, Evergreen, CO 80439 (the "Home").

14.   The Shaubs entered into a Contract to Buy and Sell Real Estate with the Browns to

8

purchase the Home on or about June 5, 2017.

15. The Shaubs claim the Browns communicated through their real estate agents about the condition of the Home between June 5, 2017 and June 8, 2017.

16. The Browns conveyed the Home to the Shaubs on July 28, 2017 pursuant to a Warranty Deed.

17. On March 2, 2018, the Shaubs brought a Complaint and Demand for Jury Trial against the Browns (referred to as the "Underlying Complaint" attached as *Exhibit 4*), alleging, *inter alia*, as follows:

> 4. On or about June 5, 2017, Plaintiff and Defendant entered into a Contract to Buy and Sell Real Estate with Defendants ("the Agreement") to purchase the property located at 1891 Sugarbush Drive, Evergreen, CO 80439 (the "Property").
>
> 5. The Agreement provides in Section 10.1 that, "Seller agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's property Disclosure form completed by Seller to Seller's actual knowledge, current as of the date of this Contract."
>
> 6. On June 5, 2017, Defendants delivered to Plaintiffs a Colorado Real Estate Commission's Seller's Property Disclosure form (the "Property Disclosure").
>
> 7. In Defendants' Property Disclosure, Defendants claimed that there were roof problems that "now" existed.
>
> 8. On or around June 8, 2017, Plaintiffs sent correspondence through his real estate agent requesting additional information about the nature and extent of the roof damage so that he could direct his inspector to investigate the issue:
>
>> *"The Seller's Disclosure indicates that there is currently a roof issue that is known by the Seller. But it doesn't give any detail as to what the problem is. I need to know about this issue so that I can give a heads up to the inspector to check it out."*

9. Later in the day on June 8, 2017, Defendants responded through their agent, stating that the "This was an error. There is NO existing roof damage needing any repairs."

10. On June 8, 2017, Defendants executed and delivered to Plaintiffs an amended Property Disclosure ("Amended Property Disclosure"), wherein Defendants changed their answer to the question regarding existing roof problems to "No."

11. Seller's Property Disclosure specifically indicates the following responses:

    Section B: ROOF Do any of the following conditions now exist:

    a. "Roof problems" - Defendants answered by placing an X in the "No" box.

    b. "Roof leak: Present" - Defendants answered by placing an X in the "No" box.

    c. "Damage to roof: Present" - Defendants answered by placing an X in the "No" box.

12. The Seller's Property Disclosure also addressed roof issues under Section A as follows:

    Section A: STRUCTURAL CONDITIONS Do any of the following conditions now exist or have they ever existed:

    a. "Moisture and/or water problems" - Defendants answered yes, but qualified their answer, stating that the roof leak had been "*repaired without further leak*."

13. Defendants conveyed the Property to Plaintiffs pursuant to a Warranty Deed dated July 28, 2017.

14. Subsequent to the purchase of the Property, Plaintiffs discovered numerous defects ("Defects") in the Property. Such Defects include, but are not limited to the following;

    a. Substantial roof problems, including water leaks in numerous locations; and
    b. b. Code compliance issues related to the rear deck.

10

15. Subsequent to the purchase of the Property, Plaintiffs also learned that Defendants had performed extensive renovations to the Property in 2013 and 2014, but failed to complete the permit process pursuant to the Jefferson County Building Code, and further failed to obtain a Final Building Inspection in accordance with the Jefferson County Code R109.3.10.  The Jefferson County permit report indicated that certain steps in the permit process, including the "Final Electric" inspection were "Rejected;" and that certain other steps, including the "Final Building" inspection step in the permit process had "Expired."

16. Notwithstanding that certain steps in the permit process were either rejected or had expired, and that the final inspection had not been completed pursuant to Jefferson County Code R109.3.10 on an extensive renovation, Defendants failed to disclose the same.

17. The Seller's Property Disclosure specifically indicates under Section A as follows:  Section A: STRUCTURAL CONDITIONS Do any of the following conditions now exist or have they ever existed:

    a. "Building code, city or county violations" - Defendants answered by placing an X in the "No" box

18. Subsequent to the purchase of the Property, Plaintiffs also discovered a prior written building inspection report regarding the Property, which cited numerous structural, roof, and drainage problems, among others; and further discovered an engineering report which identified code compliance problems with the driveway.

19. Notwithstanding the existence of the prior inspection and engineering reports, Defendants failed to disclose the same.

20. The Seller's Property Disclosure specifically addresses the issue of prior written reports under Section M as follows:

    Section M: OTHER DISCLOSURES Do any of the following conditions now exist:

    a. "Written reports of any building, site, roofing, soils or engineering investigations or studies of the Property" - Defendants answered by placing an X in the "No" box

11

21. Upon information and belief, Defendants knew of the Defects, code compliance issues, and prior building inspection and engineering reports set forth herein at the time they completed the Property Disclosure.

22. As a result of Defendants' failure to disclose the Defects, code compliance issues, and prior inspection and engineering reports set forth herein, Plaintiffs have suffered damages, including substantial inconvenience and loss of use and enjoyment of the Property, as well as the cost necessary to repair the Property.

18. The Shaubs assert claims for relief for breach of contract and negligent misrepresentation against the Browns.

19. In their breach of contract claim, the Shaubs allege, in part, as follows:

25. Upon information and belief, Defendants breached the Agreement by failing to disclose the Defects, code compliance issues, and prior building inspection and engineering reports in the Property Disclosure.

26. Upon information and belief, Defendants breached the Agreement by knowingly providing a Property Disclosure that contained material misrepresentations of fact.

20. In their negligent misrepresentation claim, the Shaubs allege, in part, as follows:

29. Upon information and belief, Defendants in the course of the real estate transaction gave false information to Plaintiffs by failing to disclose to Plaintiffs the existence of roofing and structural Defects, code compliance issues, and prior inspection and engineering reports set forth above.

30. Upon information and belief, Defendants gave such false information to Plaintiffs for their guidance in the purchase of the Property.

31. Upon information and belief, Defendants were negligent in not informing Plaintiffs of the nature and existence of the Defects, code compliance issues, and prior inspection and engineering reports, as set forth herein.

32. Upon information and belief, Defendants gave the false information

12

      to Plaintiffs knowing that Plaintiffs would rely on such information.

33. Plaintiff's justifiably relied on Defendants' false information by completing the purchase of the Property.

34. As a result of the false information provided by Defendants, Plaintiffs have suffered and will continue to suffer damages and losses in an amount to be determined at trial.

### IV. TENDER OF DEFENSE AND INDEMNITY

21. The Browns tendered defense and indemnification to Plaintiff SECURA.

22. SECURA believed the Browns' tender was made under Policy 1.

23. Initially, SECURA denied the Browns' tender under Policy 1 pursuant to the misrepresentation exclusion and the exclusion for property damage to property owned by the insured, while reserving all of its rights under Policy 1.

24. Thereafter, the Browns asked SECURA to reconsider its position and tendered defense and indemnity under Policy 1 and Policy 2, accusing SECURA of bad faith, and threatening to assign their rights against SECURA to the Shaubs as part of a settlement agreement pursuant to *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010).

25. In response, SECURA accepted the Browns' tender of defense, while reserving all rights under the Policies.

26. As SECURA does not believe the Policies afford coverage for the Underlying Complaint, SECURA is seeking a judicial declaration of its obligations, if any, under the Policies.

### FIRST CLAIM FOR RELIEF

27. Plaintiff seeks declaratory judgment, pursuant to the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.* and F.R.C.P. 57, that there is no coverage for the Underlying Complaint under the Policies, including but not limited to:

    a. The insuring agreement has not been triggered in that there has not been property damage caused by an occurrence;

    b. Assuming *arguendo* the insuring agreement is triggered, one or more of the exclusions preclude coverage;

26. In requesting this declaratory relief, Plaintiff is requesting an interpretation of the rights, legal status and relationships of the parties under the above law and facts.

27. Such interpretation is appropriate under the provisions of the Federal Declaratory Judgments Law, 28 U.S.C. § 2201 *et seq.* and F.R.C.P. 57.

WHEREFORE, Plaintiff requests that the Court determine the rights, status or other legal relations of the parties under the above law and facts, and for all other relief to which Plaintiff may be entitled, including costs, expenses, attorney fees and pre- and post-judgment interest as may be permitted by law.

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 21ST day of September, 2018.

LAMBDIN & CHANEY, LLP

*/s/ Melissa A. Wiese*
_____
Melissa A. Wiese
Lambdin & Chaney, LLP
4949 S. Syracuse St., Suite 600 Street, Suite
Denver, CO 80237
Phone: (303) 799-8889
E-Mail: mwiese@lclaw.net
**Attorneys for Plaintiff**

15